IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF WEST VIRGINIA

MYLAN LABORATORIES, INC.,
MYLAN PHARMACEUTICALS, INC.,
UDL LABORATORIES, INC.,

       Plaintiff,

v.                   //    CIVIL ACTION NO. 1:07CV95
                                (Judge Keeley)

ELIOT G. DISNER, ELIOT G. DISNER,
a Professional Corporation,
JOHN/JANE DOE, Defendants 1-10,

       Defendants.

## MEMORANDUM OPINION AND ORDER DENYING DEFENDANT'S MOTION TO DISMISS

On December 13, 2007, the Court conducted a scheduling conference in this case. During the hearing, the Court also heard argument on the defendants' motion to dismiss. For the reasons stated on the record, and set forth more fully below, the Court denied the motion to dismiss.

### I. FACTS AND PROCEDURAL HISTORY

On June 18, 2007, the plaintiffs, Mylan Laboratories, Inc., Mylan Pharmaceuticals, Inc., and UDL Laboratories, Inc. (jointly "Mylan"), filed a complaint in the Circuit Court of Monongalia County, West Virginia. The defendants, Eliot G. Disner and Eliot G. Disner, Inc., removed the case to this Court on July 11, 2007, based on diversity jurisdiction.

**MYLAN LABORATORIES, INC., ET AL. V. DISNER**  1:07CV95

## MEMORANDUM OPINION AND ORDER DENYING
## DEFENDANT'S MOTION TO DISMISS

This case centers around a conflict between Mylan and its former counsel, Eliot Disner ("Disner"). In 1997, Mylan retained Disner, allegedly an expert in antitrust law, to obtain antitrust advice. Disner was employed at that time by Ervin, Cohen & Jessup, LLP. He left that firm in 2002 to join Manatt, Phelps & Phillips, LLP, but allegedly continued to advise Mylan until 2005.

Disner allegedly advised Mylan on several agreements it was negotiating with companies that supply active pharmaceutical ingredients to Mylan for the manufacture of two generic drugs, lorazepam and clorazepate. The details of these agreements are not important at this time. The result of these negotiations, however, led the Federal Trade Commission ("FTC") to investigate Mylan's activities, and, ultimately, led to the filing of several major lawsuits against Mylan.

Disner, who had previously worked at the FTC, allegedly continued to advise Mylan in connection with the FTC investigation. Mylan asserts that during this time Disner failed to advise it regarding ways to diffuse the FTC's concerns, minimize Mylan's exposure in the suits, or mitigate the harm.

The FTC and several state Attorneys General filed litigation against Mylan, which was followed by several citizen suits, including a class action (jointly the "lorazepam and clorazepate

cases"). Mylan ultimately settled many of these suits for millions of dollars, and spent millions more on costs and attorneys' fees.

In its Complaint, Mylan asserts that Disner committed legal malpractice by (1) allowing Mylan to enter into one of the negotiated agreements with the drug suppliers; (2) allowing Mylan to engage in negotiations with other suppliers; and (3) after the FTC launched its investigation, failing to advise Mylan of ways to mitigate the damages, and, instead, advising that the FTC would accept a harmless consent decree, would not seek damages, and that the states would drop their claims after the FTC dropped its claim.

On August 21, 2007, Disner filed a motion to dismiss Mylan's complaint on the basis that the statute of limitations had run. Disner also argued that Mylan is judicially estopped from pursuing this case because it has taken a position in this case that is diametrically opposite to the position it asserted in prior litigation.

## II.  LEGAL ANALYSIS

Motions to dismiss made pursuant to Fed.R.Civ.P. 12(b)(6) "should not be granted unless it appears certain that the plaintiff can prove no set of facts that would support its claim and would entitle it to relief." Mylan Labs. Inc. v. Matkari, 7 F.3d 1130, 1134 (4th Cir. 1993). "In considering a motion to dismiss, the

3

court should accept as true all well-pled allegations and view the complaint in the light most favorable to the plaintiff." Id.

"Stated another way, it has often been said that the purpose of a motion under Rule 12(b)(6) is to test the formal sufficiency of the statement of the claim for relief; it is not a procedure for resolving a contest about the facts or the merits of the case." Nutter v. Clear Channel Communications, Inc., 2006 WL 2792903, *2 (N.D.W.Va. 2006) (Stamp, J.) (citing 5A Charles Alan Wright & Arthur R. Miller, Federal Practice and Procedure § 1356, at 294 (2d ed. 1990)).

### A. Statute of Limitations

Disner asserts that the Complaint clearly indicates Mylan was aware of the alleged malpractice by the year 2000, at the latest. He further points out that the Complaint fails to plead that the statute of limitations should be tolled. According to Disner, the claim therefore should be dismissed pursuant to Fed.R.Civ.P. 12(b)(6).

In West Virginia, the statute of limitations for malpractice runs two years after the right to bring the action has accrued. See W.Va. Code § 55-2-12; Hall v. Nichols, 400 S.E.2d 901 (W.Va. 1990). As an exception to this rule, West Virginia has adopted a "continuous representation doctrine," which "tolls the running of

4

the statute in an attorney malpractice action until the professional relationship terminates with respect to the matter underlying the malpractice action." Smith v. Stacy, 482 S.E.2d 115, 120 (W.Va. 1996). However, "the limitations period for a legal malpractice claim is not tolled by the continuous representation rule where an attorney's subsequent role is only tangentially related to legal representation the attorney provided in the matter in which he was allegedly negligent." Id. at 121. Thus, "[t]he inquiry is not whether an attorney-client relationship still exists on any matter or even generally, but when the representation of the specific matter concluded." Id. (internal quotations excluded)(quoting Ronald E. Mallen and Jeffrey M. Smith, Legal Malpractice § 21.12, at 822 (4th ed.1996).

A significant factual dispute exists regarding when the parties terminated Disner's representation of Mylan. Both Mylan and Disner have provided the Court with documents outside the four corners of the Complaint in an effort to establish the dates when each contends Disner was actually employed. The Court need not address these disputes, however, because that issue is not ripe for disposition at this time.

In the Complaint, Mylan asserts that Disner "continued to advise Mylan on issues relating to the underlying subject matter of

this complaint into 2005."[1] Mylan filed this suit in June 2007. Thus, viewing the allegations contained in the Complaint in the light most favorable to Mylan, the Court concludes that it has asserted facts which, if proven, would meet the requisite time frame for filing within the statute of limitations.

Because of the current posture of the case, the Court denies Disner's motion to dismiss on this ground. His assertion that Mylan's claims are barred by the statute of limitations is an affirmative defense raising an issue of fact in need of further factual development.

### B. Judicial Estoppel

Disner next contends that Mylan should be judicially estopped from claiming that Disner is liable for damages because Mylan has previously asserted in this Court that it had meritorious defenses to the lorazepam and clorazepate litigation. In <u>Mylan, et al. v. Clifford Chance, et al.</u> (1:03cv180), Mylan alleged that its former counsel, Clifford Chance and MAGIS ("Clifford Chance"), committed legal malpractice in the way they advised Mylan to settle the claims in the lorazepam and clorazepate cases. Disner asserts

---

[1] In briefing this issue, Mylan asserts that Disner continued to provide services through the end of the trials in the lorazepam and clorazepate cases, which concluded with a jury verdict in June 2005.

that, in Clifford Chance, Mylan made direct, material factual representations that are directly contrary to what it asserts in this case.

"Judicial estoppel precludes a party from adopting a position that is inconsistent with a stance taken in prior litigation." John S. Clark Co. v. Faggert & Frieden, P.C., 65 F.3d 26, 28-29 (4th Cir. 1995) (citing United Virginia Bank v. B.F. Saul Real Estate Investment Trust, 641 F.2d 185, 190 (4th Cir. 1981)).

> In the Fourth Circuit, the party seeking to have a court apply the doctrine of judicial estoppel must establish three elements: (1) The party sought to be estopped is seeking to adopt a position on an issue of fact (rather than law or legal theory) that is inconsistent with a stance taken in prior litigation; (2) the prior inconsistent position must have been accepted by the court; and (3) the party sought to be estopped must have intentionally misled the court to gain unfair advantage.

Virden v. Altria Group, Inc., 304 F.Supp.2d 832, 843 (N.D.W.V. 2004) (citing 1000 Friends of Md. v. Browner, 265 F.3d 216, 226-27 (4th Cir. 2001)).

In his argument Disner relies on two statements made in the beginning stages of the Clifford Chance litigation. First, Mylan alleged in its Complaint in Clifford Chance that "Mylan had meritorious defenses to all claims against it in the Antitrust Litigation that were settled pursuant to the Settlement Agreements and had no liability to any plaintiff in those actions." Second,

in a memorandum of law Mylan stated that "subsequent activity in the case and investigation has revealed that Clifford Chance committed malpractice because Mylan had meritorious defenses, had no liability, and the settlement was structurally flawed."

Mylan denies making a contradictory claim in this case, arguing that Disner misconstrues the allegations against Clifford Chance as well as the allegations against Disner in this case. According to Mylan, its action against Clifford Chance was based on inadequate advice and mishandling of the litigation and settlement of the lorazepam and clorazepate suits. In that case, Mylan alleged it had not given informed consent in connection with litigation decisions, and that it could have obtained a better settlement.

Here, the subject matter of Mylan's suit is not whether its acts violated antitrust laws (and therefore whether it actually had a defense in the prior litigation), but, rather, whether Disner violated his duties as Mylan's attorney and his contract with Mylan when he failed to fully advise Mylan about the serious risk of major litigation exposure, and when he failed to advise Mylan on how to minimize the damages and mitigate the harm. Finally, Mylan asserts that it has not attempted to mislead this court.

**MYLAN LABORATORIES, INC., ET AL. V. DISNER**　　　　　　　　　　　1:07CV95

## MEMORANDUM OPINION AND ORDER DENYING
## DEFENDANT'S MOTION TO DISMISS

As a threshold issue, too many subtleties exist in the claims alleged in this Complaint, and in arguments made in the prior litigation, for the Court to conclude with certainty at this stage that Mylan is asserting a factual position inconsistent with its arguments in <u>Clifford Chance</u>. From the face of its Complaint, Mylan does not actually assert that it had no meritorious defense to the prior cases, but rather that Disner did not meet his legal duties to provide an adequate assessment to Mylan of the potential litigation dangers that it faced, and the potential consequences of that litigation.

For example, in paragraph 31 of the Complaint, Mylan states that "Mr. Disner committed legal malpractice at three critical junctures: (a) when he allowed Mylan to enter into the exclusive supply agreement with Profarmaco/GYMA without fully investigating or researching the issues or apprising Mylan of the substantial risks." While that allegation may imply that Mylan did not have a meritorious defense to the underlying cases, it does not actually make such an assertion. Whether Disner fulfilled his legal duty to Mylan to fully investigate and research the proposal is a different question from whether a meritorious defense ultimately existed.

## MEMORANDUM OPINION AND ORDER DENYING
## DEFENDANT'S MOTION TO DISMISS

Even assuming that Mylan's complaint does assert a diametrically opposed factual position, judicial estoppel is inappropriate because the Court did not "accept" Mylan's factual position in the Clifford Chance case. Disner asserts that this Court "accepted" Mylan's prior position because it denied the defendant's Rule 12(b)(6) motion to dismiss in that litigation. Disner admits that, while the Court denied that motion based on various procedural matters, it did not explicitly accept Mylan's factual assertion that it had a meritorious defense to the underlying claims. Disner argues, however, that the Court implicitly accepted Mylan's prima facie case and, thus, its factual assertions.

"[J]udicial acceptance means only that the first court has adopted the position urged by the party ... as part of a final disposition." Lowery v. Stovall, 92 F.3d 219, 224-25 (4th Cir. 1996) (quoting Edwards v. Aetna Life Ins. Co., 690 F.2d 595, 599 n. 5 (6th Cir. 1982)). Furthermore, "judicial estoppel does not apply to the settlement of an ordinary civil suit because there is no judicial acceptance of anyone's position." Id. (internal quotations omitted).

## MEMORANDUM OPINION AND ORDER DENYING
## DEFENDANT'S MOTION TO DISMISS

As Disner is well aware, the <u>Clifford Chance</u> litigation settled. This Court, therefore, did not "accept" any of the positions urged by the parties in that case, and Disner, thus, cannot assert judicial estoppel in the pending action.

### III.　CONCLUSION

For the reasons stated above, the Court **DENIES** Disner's motion to dismiss (dkt. no. 12). The statute of limitations argument is denied without prejudice. The judicial estoppel argument is denied with prejudice.

It is so **ORDERED**.

The Clerk is directed to transmit copies of this Order to counsel of record.

DATED: December 21, 2007

　　　　　　　　　　　　　　　　/s/ Irene M. Keeley
　　　　　　　　　　　　　　　　IRENE M. KEELEY
　　　　　　　　　　　　　　　　UNITED STATES DISTRICT JUDGE